RUTLAND MARBLE COMPANY *v.* CHARLES H. BLISS.

*Statute of Limitations.　Absence from the State.*

A temporary absence does not arrest the running of the statute, so long as a residence is retained in this State; thus, the defendant, having a residence here, and leaving his family here, went into New York, and was absent several years for business purposes, without intending to acquire a new residence or to abandon the old one. He was frequently here with his family, and his presence could have been easily ascertained; but his wife was with him in New York a small portion of the time; they kept house there one winter; he paid taxes there, and voted there once; *Held,* that the running of the statute was not arrested.

ASSUMPSIT. Pleas, general issue and Statute of Limitations. Heard by the court on the report of referees, September Term, 1884. VEAZEY, J., presiding. Judgment *pro forma* for the plaintiff. The writ was dated July 19, 1883; the plaintiff's notes and accounts were due in April, 1874. The referees found, that the plaintiff was a corporation doing business in Rutland, quarrying and selling marble; that the business was carried on by a superintendent; that

the defendant was engaged in the marble business in Boston, that the notes and accounts were for marble, and that he failed in 1875; that in July of that year, he with his family came to Brandon to reside, where he had formerly lived, taking a few articles of furniture with them; that in the spring of 1876 he engaged in the marble business, hiring a mill in Middlebury, a fact known to the plaintiff's superintendent; that the defendant continued to reside at Brandon, having received the rest of his furniture from Boston, boarding at different places with his family, and some of the time his father and mother boarding at the same place; that the defendant moved to Brandon with the " expectation and intention to make his home at Brandon "; that they should have found this fact from other testimony without that of the plaintiff himself.

"In February, 1877, the defendant went to New York city to look for business, and left his wife boarding at the hotel in Brandon, where she remained a short time, and then went to a private house to board where his father and mother boarded.

"The defendant soon got into business in New York and has continued there ever since. His business was rather of a speculative character. After awhile he put up buildings by contract, and later for himself and sold them. He was at first in debt and poor, but his business prospered more and more as time went on and he got into better circumstances, but to what extent did not appear.

"He boarded at different places in New York and sometimes had a business office separate from his boarding or rooming place. In the winter of 1877–8, being his first winter in New York, his wife and child went there, and, after visiting her sister a short time in Brooklyn, went to stay with the defendant in New York and remained there boarding with him two or three months, and then returned to Brandon. The defendant never took any furniture to New York. When his wife went there as aforesaid, she left their furniture in furnished rooms in Brandon, where his father and mother continued to board. Some time that year, after his wife's return to Brandon, she went to live in hired rooms with his mother, where they kept house; and that tenement or some other one was occupied by herself and child, except as hereinafter stated, and by their father and mother for two years or more." * * * "For the

first two years after the defendant went to New York as aforesaid, he did not go to Brandon more than twice a year, and then only on very short visits of a day or two. After that he went a little oftener for two years, but not very often, and on like short visits. In the winter of 1878-9, the defendant's wife and child went to New York and stayed as they had done the previous winter, and then returned to Brandon and remained, as before, through the summer and until the next winter, when they again went to New York and spent the winter; and this practice was continued to the present time. The wife's stays in New York were from three to four months; and one year she was sick in the spring, and remained on that account until June. In the winter of 1880-1, or the next winter,—the defendant was not sure which,—he and his wife kept house in a flat in New York. He built a building for sale and sold it; and when he sold he agreed to occupy the flat until the 1st of May following, and he and his wife and child did occupy it. They took no furniture from Brandon but bought new, and in the spring sent it to Brandon." In October, 1881, the defendant purchased a house in Brandon, "and soon after-. wards his family, including his father and mother, moved into it, and have lived there ever since, except that his wife continued to spend the winters with him in New York as before. The house was deeded to his wife. It did not appear who paid for it. Since that time the defendant has been to Brandon every two or three weeks. His general habit has been to make the journeys from New York and return on night train." * * * " The defendant sent money from New York to pay board and support the family when keeping house. The amount was small the first year, but increased along from year to year. He sent money in some instances when his wife was with him in New York. The expenses of the family in Brandon, including the father and mother, were paid by the combined earnings of the defendant and his wife and father, but in what proportion did not appear. The defendant never had anything to do with negotiating leases for the house or houses that his wife and family occupied before buying the house in 1881. His mother negotiated a lease of one of the houses he occupied, and the lease was drawn to his father and mother, E. J. Bliss and wife, they both being present and so directing. It was not much, if any, known outside of the family to

what extent the defendant provided for the family in Brandon. During all this time the defendant has had no attachable property in Vermont. Nor has he paid taxes on poll or property in Vermont. His name has appeared on the grand list but once during this time, and that was in 1877, and he was then assessed only on his poll. He did not know of that. The tax list containing this tax not having been collected in 1877, passed into the hands of the collector of 1878. The collector had long been acquainted with the defendant; but not finding him during the year, got the tax abated in 1879, on the ground that the defendant was not in town. The collector lived on a street, through which people going to and from where the defendant's wife was boarding or living and the depot usually passed, and where the defendant would pass if he came to Brandon." * * * "The defendant paid taxes in New York on personal property, such as teams, &c., but not on money or poll. In 1881, the defendant voted at the municipal election in New York." * * * "When the defendant erected buildings in New York he filed a statement or plans and specifications with certain corporation officials, as required by law, as shown by the session laws of New York of 1881, Chap. 687, page 922; also of 1882, page 138, which are referred to. In these statements he was represented as a resident of New York. These were sworn to by him as required by law. The number of these did not appear, but more than six were filed; nor did it appear when they were filed, but at different years. Upon inquiry on trial, the defendant did not deny but that he had sometimes registered at hotels as being from New York. Neither did he claim to have even registered as from Brandon, but thought he might sometimes, that is, since he has been in New York. He said he could not say how he had registered. No other evidence was introduced on this point. We find he did sometimes register from New York, and do not find that he did not always so register.

"The defendant testified under objection and exception of the plaintiff, that it was always his intention after going to New York, to have and keep a residence in Brandon; and that when his wife came to New York and stayed with him winters as aforesaid, their intention was for her to return to Brandon as she did, in the spring; and never to break up their home and residence in Brandon, or form one in New York.

" Laying all this evidence of intention out, and passing on the question of intent on the other evidence, we find the defendant had no definite intention as to his residence from the time he went to New York, until he bought the house in Brandon as aforesaid. After that it was his purpose to make his home there. Before that, he kept his household effects in Brandon and in use by his family as aforesaid; but his business was in New York, and his family were with him more in New York, than he was with them in Brandon as above shown. And in the winter of 1881-2, he had a dual establishment, as shown above, his family being with him in New York. In doing business he treated New York as the place of his residence. We do not find that he ever represented or claimed it was not there, after he went there, until he so claimed in this cause. Weighing the evidence of intention which was objected to as aforesaid, with the other evidence on the same point, we modify the above finding as to the defendant's intention only as follows: We find he had prior to the purchase of the house in Brandon, no definite intention of making New York the place of residence for his family, but regarded their home as in Brandon, and expected his wife to return there, as she did from time to time, after being with him in New York, as aforesaid.

" Several of the listers of Brandon during the period of the defendant's absence to New York, were introduced as witnesses by the plaintiff, and testified, some that they knew the defendant, and others that they knew of him; and testified under objection and exception of the defendant, in substance that they could not have told where the defendant resided, whether in Brandon or not. Treating this evidence as admissible we so find the fact. With their evidence and that of the tax collector to same effect, we find that a creditor could not, by the exercise of reasonable inquiry and diligence have found where and how legal process could have been served upon the defendant in Brandon under the Statute as to the service of a summons by leaving a copy at the last and usual abode, &c., unless as a matter of law, in order to establish reasonable diligence, it was

Rutland Marble Company *v.* Bliss.

the duty of a creditor under the facts and circumstances above stated, to inquire of defendant's family, or their intimate relatives or family friends there residing. By inquiring of them we find, upon the presumption that they would have told the truth, that a creditor would have obtained the facts of the defendant's whereabouts and business in a general way; and also how and where he and his family lived, as above set forth; but whether good service of a summons could then have been made by leaving a copy, &c., we conceive to be a question of law, which we leave undecided by us. We refer to the time prior to 1882, when the family moved into their own house. The defendant's visits to Brandon were so few, and of such brief duration, prior to 1881, we are not able to find that a creditor could have got personal service on the defendant, by the exercise of reasonable diligence, after he went to New York. After 1880, we find personal service could have been made by such diligence. We do not find that the defendant's visits to Brandon were secret and not open."

*E. J. Ormsbee* and *J. C. Baker*, for the defendant.

The referees having found the defendant's residence to be in Brandon in July, 1875, the presumption is, that it continued to be there. *Rixford* v. *Miller.* 49 Vt. 319; *Nixon* v. *Palmer*, 10 Barb. 175; 1 Greenl. Ev. s. 41; *Farr* v. *Payne*, 40 Vt. 615. Residence is changed from one place to another only by abandonment of thê first place of domicile with the intention not to return. *Hegeman* v. *Fox*, 31 Barb. 475; *Somerville* v. *Somerville*, 5 Ves. Jr. 750; *DeMeli* v. *DeMeli*, 5 Civ. Pr. Rep. 306. Mere absence is not sufficient to arrest the running of the statute; the party must *reside out of the State.* REDFIELD, Ch. J., in *Hall* v. *Nasmith*, 28 Vt. 791. One test is, whether legal service of process could be made by leaving a copy at the place of abode. *Hackett* v. *Kendall*, 23 Vt. 275. Temporary absence has no effect. *Davis* v. *Field*, 56 Vt. 426; *Langdon* v. *Dowd*, 6 Allen, 423.

The plaintiff did not exercise reasonable diligence in seeking for an opportunity to serve process. R. L. ss. 63, 1405–6 ; *Marvin* v. *Wilkins,* 1 Aik. 107 ; *Kidder* v. *Hadley,* 25 Vt. 544 ; *Hallet* v. *Basset,* 100 Mass. 167 ; *Reeder* v. *Holcomb,* 105 Mass. 93 ; *Hullett* v. *Hullett,* 37 Vt. 581.

*Lawrence & Meldon,* for the plaintiff.

The question here is not where the defendant's domicile was, but where his residence was ; for the home of a man's family is not necessarily his residence. 24 Mich. 275 ; 19 Wend. 11, 40 Mo. 169 ; 2 Vt. 437.

And though his domicile, his home and his family may be here, as now claimed by the defendant, yet the statute would not run during such absence as is shown by the report. *Ward* v. *Coke,* 32 N. H. 452 ; S. C. 38 N. H. 35 ; *Brown* v. *Rollins,* 44 N. H. 446 ; *Harden* v. *Palmer,* 2 E. D. Smith (N. Y.) 172 ; *In re Thompson,* 1 Wend. 44 ; *Miller* v. *Tyler,* 61 Mo. 401 ; 9 Ill. 125. An indefinite intent to return at some future, uncertain day, does not keep up a residence here. *Frost* v. *Brisbin,* 19 Wend. 11 ; 12 Allen, 111 ; *Bruce* v. *Bruce,* 2 B. & P. 229, *n.*; *Hackett* v. *Kendall,* 23 Vt. 275.

The debtor's residence here must be such that the creditor by due diligence can get legal service, and that too, without pursuing the debtor beyond the State. *White* v. *Bailey,* 2 Mass. 271 ; *Russ* v. *Fay,* 29 Vt. 386 ; *Davis* v. *Field,* 56 Vt. 426 ; *Wheeler* v. *Brewer,* 20 Vt. 113.

Defendant's being in New York, engaged in business there, voting there, swearing to and claiming his residence there, raise the presumption that he has his residence and domicile there, and the burden is thrown upon him to show to the contrary. *Bruce* v. *Bruce,* 2 B. & P. 229, *n.*

The opinion of the court was delivered by

ROYCE, Ch. J. The demands that are described in the referee's report were all due and payable in April, 1874. At that time the defendant resided and was doing business in Boston. He failed in business in 1875. In July of that year,

he, with his family, consisting of his wife and one child, came to Brandon to reside. In the winter of 1876–7, he was engaged in the marble business in Middlebury; and that fact was known to the superintendent of the plaintiff company. His residence thus commenced in Brandon has been ever since continued, unless his absences, and those of his family from the State, as shown by the report, have interrupted it.

In February, 1877, the defendant went to New York to look for business, leaving his wife in Brandon. She was with him ·in New York a small portion of the time after that; and while there they boarded, except in the winter of 1880–81, when they kept house. They had no home in New York, and always intended to keep their residence in Brandon. The defendant was frequently in Brandon with his family, and under such circumstances that his presence there could have been easily ascertained. His stay in New York was for business purposes, and was not intended to be permanent; for it is found that he had no definite intention of making New York a place of residence for his family, but regarded Brandon as their home, and expected his wife to return there, as she did from time to time, after being with him in New York.

In order to arrest the running of the statute, it must appear that the defendant was absent from and resided out of the State. It is not sufficient to show absence; but he must have had a residence in some other State. If he has a residence in this State, so that process can be served upon him in the manner provided by law, the running of the statute is not arrested by his absence from the State. A mere temporary residence in another State does not constitute the party a resident of that State within the meaning of the statute, so long as he keeps a residence in this State.

Upon the facts found, the right to collect the demands in suit was barred by the Statute of Limitations, and the *pro forma* judgment of the County Court is reversed, and judgment rendered for the defendant.